IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

VINCENT EASTWOOD, individually
and on behalf of all others similarly situated                               PLAINTIFF

v.                              Case No. 3:11-CV-03075

SOUTHERN FARM BUREAU CASUALTY
INSURANCE COMPANY                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant's motion for leave to return checks not negotiated (Doc. 78), Plaintiff's response in opposition (Doc. 79), and Defendant's reply (Doc. 80), which was filed without leave of Court but was nonetheless considered.[1]

Defendant's motion concerns certain subrogation checks it received after this litigation began.  Rather than negotiate these checks, however, Defendant "instead secured them at SFB's Little Rock office pending a determination of the motion for class certification." (Doc. 78).  A class was certified in this matter on June 5, 2013.  Now it appears that Defendant seeks the Court's approval to return 11 unnegotiated subrogation checks written by insureds from their personal checking accounts and 358 checks written by various third-party insurance carriers to "Farm Bureau, as subrogee of the insured" or to "Farm Bureau, on behalf of the insured."

Defendant acknowledges that so much time has passed since it first received these 369 subrogation checks that they are now likely to be stale and non-negotiable.  According to Plaintiff, Defendant began holding rather than negotiating these checks as early as June of 2012, nearly a year *after* this lawsuit was filed and more than a year *before* Defendant filed its motion for leave to return

_____

[1] Counsel is cautioned in future filings to comply with Local Rule 7.2(b) (contemplating the filing of a reply as a matter of course only for summary judgment motions).

the checks.  Defendant does not dispute these dates in its reply brief.  Instead, Defendant states that its intent in not negotiating these checks "was to maintain the status quo pending resolution of the class certification issue in the case . . . ."  (Doc. 80, p. 1).

Defendant requests leave to return these checks to their original makers.  Plaintiff opposes Defendant's plan and asks instead that the Court order Defendant to negotiate the checks and pay the funds back to the insureds with interest.   After considering both parties' briefing on the matter, the Court finds that no ruling is required on Defendant's motion, and it will be terminated for that reason.  The administrative predicament in which Defendant finds itself with regard to these checks is entirely its own creation, and whether Defendant chooses to negotiate or to return these checks is of no particular consequence to the outcome of this litigation.

It is clear that the funds represented by the 11 personal checks in Defendant's possession never left the insureds' bank accounts because Defendant never negotiated the checks.  While the checks continue to remain unnegotiated, the insureds who wrote these checks cannot qualify as members of the class, as they fail to meet section (d) of the class definition, which requires that a portion of their recovery be "taken by Defendant as subrogation or reimbursement."  No portion of these insureds' settlements with their third-party carriers was diminished or "taken" by Defendant, since the subrogation checks were never negotiated.[2]

As for the 358 insureds whose recoveries were, in fact, undercut due to Defendant's

---

[2]  Plaintiff makes an argument in its brief that these 11 insureds should be considered members of the class because Defendant deprived them of the use of their money for the year-long period that Defendant held but did not negotiate their subrogation checks.  Plaintiff maintains that these insureds suffered a deprivation or injury at Defendant's hands because they "had to make sure adequate funds remained available in their checking account[s]" throughout the year in the event that the checks were negotiated.  (Doc. 79, p. 1 n. 2).  In the Court's view, this argument does not justify including these 11 insureds in the class.

solicitation of subrogation payments directly from third-party insurers, these insureds will likely qualify as class members regardless of whether the subrogation checks at issue remain unnegotiated or are returned to the appropriate third-party carriers.

The Arkansas Supreme Court held in *Riley v. State Farm Mutual Automobile Insurance Co.*, 2011 Ark. 256, *16 (2011), that an insurance company's subrogation lien "cannot arise, or attach, until the insured has received the settlement proceeds or damage award and until there is a judicial determination that the insured has been made whole." In other words, according to the holding in *Riley*, Defendant's subrogation liens against the 358 insureds in question could not have arisen until after Defendant obtained either a judicial made-whole determination or a made-whole agreement as to each insured. Therefore, if Defendant sought to recover subrogation payments directly from third-party insurance companies prior to obtaining made-whole determinations and contrary to Arkansas law, the ensuing harm would have accrued at the moment the third-party carriers acted on Defendant's demands for subrogation and subtracted these payments from the insureds' total recoveries. Since any injuries to the insureds would have already occurred when the funds were "taken" from the insureds' recoveries, as the class definition provides, Defendant's decision not to negotiate the checks would have no bearing on the issue of liability in this matter.

IT IS THEREFORE ORDERED that Defendant's motion for leave to return checks not negotiated (Doc. 78) is TERMINATED, as no action is required by the Court.

IT IS SO ORDERED this 13th day of December, 2013.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

-3-