IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

VINCENT EASTWOOD, individually
and on behalf of all others similarly situated                              PLAINTIFF

v.                                    Case No. 3:11-CV-03075

SOUTHERN FARM BUREAU CASUALTY
INSURANCE COMPANY                                                        DEFENDANT

## OPINION AND ORDER

Currently before the Court are Plaintiff's motion for final approval of class action settlement (Doc. 108) and brief in support (Doc. 109) and Plaintiff's motion for attorney fees (Doc. 110) and supporting documents (Docs. 111, 112). For the reasons described herein, the motion for final approval of class action settlement (Doc. 108) is **GRANTED**, and the motion for attorney fees (Doc. 110) is **GRANTED IN PART AND DENIED IN PART**.

## I. Background

The Court certified a class in this case on June 5, 2013 (Doc. 75), finding that each of the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) had been satisfied. Several months later, on January 22, 2014, Plaintiff filed an unopposed motion for preliminary approval of class action settlement. (Doc. 91). The Court then reviewed the terms of the proposed settlement and held a hearing on the motion for preliminary approval on February 12, 2014. On February 13, 2014, the motion for preliminary approval was granted (Doc. 99), and the Court found that the terms of the proposed settlement agreement as set forth in the parties' stipulation (Doc. 93) were fair, adequate, and reasonable, while the notice procedures proposed by the parties (Docs. 93-2, 93-4) were determined to be appropriate.

The Court made only one modification to the parties' proposed notice procedure:  the Court required the claims administrator to attempt a second mailing of the notice documents when a class member failed to respond to the first mailing.  The Court reasoned that by adding this procedure, the likelihood of providing notice to as many class members as possible would be achieved.  Other notice procedures agreed to by the parties included placing the notice in a newspaper of general circulation in Arkansas and establishing both a toll-free telephone number and dedicated website to provide information about the settlement.

Plaintiff now reports that the notice process is complete, and the parties ask the Court for final approval of the settlement.  According to the declaration of Patrick M. Passarella (Doc. 109-1), a representative of Kurtzman Carson Consultants, LLC, the company that administered the notice and claim procedure for the class, the notice documents were initially mailed to 1,889 class members.  Of the initial notices that were mailed, several were returned due to incorrect addresses. Those claims forms that were returned were re-sent after correct addresses were located.  In total, 1,837 claims forms were successfully mailed.  Then, a second mailing was made to any class member who failed to respond to the first mailing.  The notice was also published in the Arkansas Democrat-Gazette, and both a toll-free telephone number and settlement website were activated during the claims period.

Of the 1,837 class members who received claims forms, only 304 were completed correctly and returned to the class administrator.  This means that roughly 16%[1] of the class members made

---

[1]  Class counsel stated at the final approval hearing that the final number of valid claims may be slightly higher than 304, as certain class members who submitted their forms past  the deadline may ultimately receive their settlement checks.  In any event, class counsel estimated that the final number of claims may comprise as much as 17% of the class, which is not materially different from the 16% figure the Court has assumed in this opinion and order.

-2-

claims on the settlement fund.  The parties agree that the average value of a class member's claim is $3,000; however, it bears mentioning that at all times the precise value of each class member's individual claim was known by counsel and was presented to the Court in the form of a spreadsheet prior to the preliminary approval hearing.  The class administrator now informs the Court that the aggregate dollar value of the 304 eligible claims is $855,956.32.  This figure represents approximately 23% of the total settlement fund of $3,600,000.00.

Only two class members requested to be excluded from the settlement, and no class members mailed in objections to the settlement or appeared in person to object at the final approval hearing.

In seeking final approval of the settlement, the parties acknowledge that their agreement provides that attorney's fees for class counsel are to be paid from the $3,600,000.00 common fund.  Defendant has agreed not to object to a fee award of up to $1,200,000.00, which is approximately one-third of the common fund.  Also, according to the settlement agreement, all money in the common fund that is not paid to the class members, class administrator, or class counsel will revert to Defendant.

## II. Discussion

### A. Approval of the Settlement

It appears that many of the concerns the Court expressed at the preliminary approval hearing regarding the potential for low class participation were well-founded.  At the hearing, the Court pointed out to the parties that the proposed notice documents were relatively lengthy and failed to state the precise amount of money each class member would receive, even though that information was known to the parties in advance.  The seven-page Long-Form Notice stated only that class members would receive "ten to thousands of dollars," a detail the Court questioned during the

-3-

preliminary approval hearing.  *See* Doc. 107, p. 17 (Court: "If someone got that notice and saw that they may have a claim for one to $5,000, they would be less likely to throw it away and not do anything with it.  Should the notice contain that information as well?").  Moreover, the agreed claim form that the class members were required to complete did not solicit information that Defendant did not already have in its possession, with the possible exception of class members' social security numbers.

The Court also suggested during the preliminary approval hearing that, rather than engage in the mailed notice procedure agreed to by the parties, perhaps it would be more efficient to write a settlement check to each class member who was a current insured and had a confirmed address. *See id.* at p. 32 (Court: "[Y]ou know, it, it would be real easy just to say, just send them a check . . . . ").  The parties did not agree to this suggestion.

Finally, the Court questioned whether publishing the Summary Notice in the newspaper was "still considered the best method of publishing legal notice" in light of "today's media environment." *Id.* at p. 38.  The Court had its reservations regarding whether the toll-free telephone number and dedicated website would be effective, as well.  Despite the Court's concerns, however, these notice procedures were, on their face, sufficient to satisfy due process, as they have commonly been used in class actions for decades.  The Court preliminarily approved the proposed notice procedures in part because the parties assured the Court that they expected the class-participation rate to be high, and in part because there was no particular reason why the multiple forms of notice would not reach most, if not all, class members.

Considering the low rate of class participation that resulted from this notice process, the Court is now faced with the question of whether to approve a settlement that will distribute funds

to a decided minority of a defined class.  As an initial matter, the Court does not find that counsel colluded or conspired to achieve this result, but instead engaged in arms-length negotiations and made good-faith efforts to achieve a fair and reasonable settlement for the class.  Defendant's attorney stated at the preliminary approval hearing that he anticipated a high rate of return and "didn't settle based on the anticipation that we are going to get a bunch of money back ."  *Id.* at pp. 35-36.  He further opined that "we have made the claims process very simple . . . all [class members] have to do is complete the form and it's pretty easy, so we think that—we think we will have a higher than average class.  And, you know, we are—we're not interested in discouraging people, not, not with this kind of a settlement . . . .").  *Id.* at p. 31.  Class counsel also confirmed that "a hundred percent [claims rate] is quite likely . . . . [because] a very significant percentage of these class members are still Farm Bureau customers, so we believe that we have a good address [for each member]."  *Id.* at p. 16.  Another reason why the claims rate was expected to be higher than the "average" consumer class action settlement was because "the dollars involved here are so significant . . . it will perk someone's interest to fill out the [claims] form . . . ."  *Id.* at pp. 16-17.

At this stage in the approval process, the Court is mindful that it is to serve as "guardian of the rights of class members" who are not actively present in the case.  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).  The guardian role should be a balanced one, however, as "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (internal quotation omitted).  Pursuant to  Rule 23(e)(2), the Court is to analyze whether the settlement is "fair, reasonable, and adequate."  To this end, the Eighth Circuit has set forth four factors to consider in this analysis:  (1) the merits of the plaintiff's case, weighed

against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Id.* at 1150, 1152.

Beginning with the first *Petrovic* factor, it is clear that at the time of settlement, Plaintiff had essentially prevailed on the merits at every stage in the litigation. The Court had certified the class and found in Plaintiff's favor on summary judgment. Even so, all litigation carries with it some risk, and this case was no exception. Defendant put forth a vigorous defense and contested nearly every issue, from the certification of the class to the assertion of various counterclaims and affirmative defenses.

The terms of the settlement were such that if 100% of the class participated, and attorney's fees and class administrator expenses were *not* included within the calculation, class members would receive about 81% of the value of their claims.[2] Moreover, even if the Court awarded class counsel $1,200,000.00 in fees, the common fund could have paid the vast majority of the class in full. Though the Court pointed out several ways in which the notice procedures might have been streamlined so as to encourage greater class participation, the notice procedures proposed by the parties and carried out competently by the class administrator comported with due process and the requirements of Rule 23. In particular, more than 1,800 members of the class were mailed copies of the notice and claims forms—not once, but twice. Further, the class potentially viewed the notice for a third time when it was published in the *Arkansas Democrat-Gazette*, a newspaper of general distribution in Arkansas, where over 90% of the class members reside.

As for the low class-participation rate, the Court acknowledges that counsel should not shoulder all the blame. Indeed, some responsibility for class participation should be laid at the feet

---

[2] The verdict amount of the claims was $4,459,000.

of the class members themselves.  That said, it is likely that in this increasingly paperless society, the tried-and-true method of mailing notices and publishing them in newspapers is becoming antiquated.  Attorneys who assume the risk of representing a putative class of individual claimants may do well to consider whether more creative notice procedures may be necessary to spark the interest of an otherwise apathetic populace, one that is inundated with junk mail and advertisements, and one that routinely receives mailings about class action settlements in which the "benefits" are nothing more than mail-in coupons or negligible cash awards.  Here, the potential for class members to receive high-dollar payouts was high; nevertheless, class participation was low.  Even so, the Court cannot go so far as to find that there was anything facially deficient about the notice procedures.  The first *Petrovic* factor therefore weighs in favor of approving the settlement.  This factor is acknowledged by courts to be the most important of the four.  *Id.* at 1150.

Turning to the second and third factors, they either weigh in favor of approving the settlement or are neutral.  The parties agree that Defendant has the ability to pay a significant amount in settlement, but courts have held that this fact, in and of itself, does not justify a finding that a settlement award is insufficient.  As for the complexity and expense of further litigation, class counsel contend that taking this matter to trial would have involved significant expense, as Defendant would have continued to litigate aggressively.

The fourth and final factor—the amount of opposition to the settlement—is difficult to evaluate.  Although no class members objected to the settlement, only 341 out of 1,837 class members responded to the settlement at all.  As discussed previously, the Court cannot find that the low response indicates that the settlement was fundamentally unfair or unreasonable.

In summary, and after considering all the factors, the Court finds that the proposed settlement warrants final approval, as it meets the requirements of due process and is otherwise fair, reasonable, and adequate.  The form, content, and method of dissemination of the notice documents and payment procedures are also approved.  With the exception of two individuals who have opted out, the settlement will fully and finally dismiss with prejudice all claims against Defendant asserted by the members of this class.   Any class members who choose to be excluded from the class will not share in the settlement proceeds or be bound by the judgment in this case.

Finally, as per the terms of the stipulation (Doc. 93) entered into by the parties, once the settlement is approved, Defendant will be deemed to have released all class members who did not exclude themselves as to any claim Defendant may have had against them based on "made-whole" subrogation rights.  The Court will retain jurisdiction to resolve any disputes or challenges that may arise as to the performance, validity, interpretation, administration, enforcement, or enforceability of the settlement in this case.

**B.  Approval of Attorney's Fee**

The Court noted during the preliminary approval hearing that the parties' settlement documents included both a reversionary clause and what is commonly known as a "clear-sailing provision."  This provision is an agreement by the defendant not to object to a specific dollar-amount or range in attorney's fees requested by class counsel.

When a class action settlement involves both a reversionary clause and a clear-sailing provision, the Court finds that it is appropriate to take a closer look at the settlement's terms to make certain that the rights and interests of the class have not been sacrificed in favor of class counsel and Defendant's pecuniary interests.  When such settlement provisions are at issue, an inherent conflict

of interest between counsel and the class may develop, particularly if class counsel's demand for fees exceeds the dollar-amount to be paid to the class.

The Court's reasoning on this topic is supported by the brief opinion of Justice Sandra Day O'Connor written in *International Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000) (denying petition for writ of certiorari) . Justice O'Connor observed that in a class action settlement, there are "several troubling consequences" of taking an approach to fees that does not require "at least . . . *some* rational connection between the fee award and the amount of the actual distribution to the class." *Id.* at 1224. In *International Precious Metals*, a class action settlement established a $40,000,000.00 common fund that included a reversionary clause. Even though the actual distribution of funds to class members was approximately $6,500,000.00—about 16% of the common fund—the district court approved an attorney's fee equivalent to one-third of the common fund—more than $13,000,000.00, an amount approximately double what the class received. The remainder of the common fund reverted back to the defendant.

Justice O'Connor remarked that "[a]rrangements such as that at issue here decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Id.* at pp. 2237-38.

Although the Court has no doubt that counsel in this case behaved professionally and diligently and did not engage in any collusion whatsoever in negotiating the settlement, the mere appearance of impropriety may arise when class counsel are paid nearly double what their clients are paid and when the remainder of the settlement fund reverts to the party that funded it the first place.

-9-

Here, class counsel ask for a fee of $1,200,000.00, based on their reasoning that the "total value" of the settlement is equivalent to the $3,600,000.000 Defendant deposited in the common fund.  The Court disagrees with this reasoning and finds instead that the total value of the settlement should be measured from the perspective of the class and the benefit the class will receive from the common fund.  Here, the class will take $855,956.32 of the common fund.  Even if the Court were to add to this the "value" of Defendant's alleged state and federal claims and defenses against certain class members, which Defendant agreed to abandon as part of the settlement, it is difficult to put a price tag on these concessions, particularly when upwards of $1,500,000.00 in the common fund will revert to Defendant at the end of the day.[3]

Class counsel should not be surprised by the Court's reasoning above with respect to the fee request.  The Court repeatedly warned class counsel during the preliminary approval hearing that it was concerned about the reversionary clause and clear-sailing provision in the settlement agreement. The Court questioned both parties' attorneys about the expected participation of the class members and also solicited counsel's opinion as to whether the proposed notice procedure would lead to robust levels of participation.  Further, the Court advised class counsel that at the time of final approval it would be expected to show some relationship between the amount claimed in fees and the amount paid to the class members from the common fund.[4]  *See, e.g.,* Doc. 107, p. 37 (Court: "[W]hen it comes time to determine what fees are here, a lot of that is going to depend on what the

---

[3]  This amounts assumes class counsel will receive their requested one-third of the common fund.

[4]  Class counsel did not provide the Court with the information necessary to make this determination when they filed their motion for settlement approval.  After the motion was filed, the Court ordered (Doc. 113) class counsel to provide the Court with the dollar value of the claims submitted by the class members and a copy of class counsel's itemized billing records.

actual claims are, the actual experience itself, and, and then you-all have done enough of these to know what you need to brief the Court on the Lodestar Cross-check for me to look at.").

Class counsel acknowledged at the final approval hearing that "[c]ourts utilize two main approaches to analyzing a request for attorney fees.  Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action.  Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996) (citations omitted).

Although in most common-fund cases, class counsel's fee will be calculated according to the "percentage of the benefit" approach, the "benefit" in those common-fund cases refers to that which *the class* receives a result of the settlement.  Here, it cannot be said that the "benefit" obtained by the class is equivalent to the value of the common fund, since nearly half of the common fund is already earmarked for reversion to Defendant.

"It is within the discretion of the district court to choose which method to apply"—lodestar or percentage.  *Id.* at 246.  Based on the above reasoning, the Court chooses to apply the lodestar and calculate class counsel's fee based on a combination of counsel's hourly rates and number of hours billed to the case.  At the Court's request, class counsel have provided itemized billing statements for the Court to review in order to perform a lodestar analysis of the fees.  It appears from these billing statements that class counsel spent a total of 1,487.30 hours litigating this case, which equates to a total fee of $670,042.50.  This amount is fair and appropriate, considering the time and effort

-11-

class counsel expended in the litigation and the procedural posture of the case at the time of settlement.  Costs and expenses totaling $9,164.62, as well as a service fee of $3,000 for the class representative, Vincent Eastwood, are also hereby awarded.

**III.  Conclusion**

For the reasons explained herein, **IT IS ORDERED** that Plaintiff's motion for final approval of class action settlement (Doc. 108) is **GRANTED**, as per the terms of the parties' stipulation regarding settlement (Doc. 93), and the terms further detailed in this opinion and order.

**IT IS FURTHER ORDERED** that the motion for attorney fees (Doc. 110) is **GRANTED IN PART AND DENIED IN PART** in that class counsel are awarded $670,042.50 in attorney's fees and $9,164.62 in costs and expenses, and class representative Vincent Eastwood is awarded a service fee of $3,000.00.  The Court will retain jurisdiction to resolve any disputes or challenges that may arise as to the performance, validity, interpretation, administration, enforcement, or enforceability of the settlement in this case.

**IT IS FURTHER ORDERED** that in light of the rulings above, this case is **DISMISSED WITH PREJUDICE** with judgment to enter contemporaneously.

**IT IS SO ORDERED** this 7th day of October, 2014.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE